# UNITED STATES DISTRICT COURT
for the

Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>Allison SMITH<br>*Defendant(s)* | )<br>)<br>)   Case No.  2:22-mj-474<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  12/17/2020 through 06/28/2022  in the county of  Franklin  in the Southern District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. §§ 841 (a)(1) 841(b)(1)(A)(vi), 841(b)(1)(A)(iii), 841(b)(1)(C), 841(b)(1)(A)(i),  846 and 860 | conspiracy to possess and possess with intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propanamide, commonly referred to as "fentanyl," 280 grams or more of cocaine base, commonly referred to as "crack," and cocaine, schedule II controlled substances, 100 grams or more of Heroin, a schedule I controlled substance |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

*Complainant's signature*

HSI  Special Agent Trace Way
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/28/2022

Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

City and state:  Columbus, Ohio

CHELSEY M. VASCURA, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**In the matter of:**

**United States of America**
v.
**Patrick SAULTZ,**
**Cordell WASHINGTON,,**
**David PRICE,**
**Tavaryyuan JOHNSON,**
**Alexis LEWIS,**
**Allison SMITH,**
**Michael FOWLER,**
**Carmela BROOKS and**
**Tyler BOURDO**

Case No.: 2:22-mj-474

Judge Vascura

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Trace S. Way, a Special Agent with Homeland Security Investigations, having been duly sworn, state the following:

### INTRODUCTION

1. Your Affiant is an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with HSI assigned to the Office of the Assistant Special Agent in Charge, Columbus, Ohio. I am currently assigned to the Central Ohio Human Trafficking Task Force (COHTTF). HSI has employed me since November of 2019. Prior to becoming a Special Agent with HSI, I served as a U.S. Border Patrol Agent for approximately two years and a Customs and Border Protection Officer for approximately four years; having begun my federal law enforcement career in August 2013. As a Special Agent my responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, human trafficking, and violations of the Immigration and Nationality Act. During my tenure as a Special Agent, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics in conjunction with human trafficking and prostitution, human trafficking, and narcotics trafficking.

3. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. I have seized or assisted in seizing contraband and evidence, including currency, narcotics, firearms, and documentary evidence, which includes electronically stored documents. I have received criminal investigative training, including 26 weeks of intensive training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. This training included instruction on the methods used by criminals to violate the laws of the United States and evade detection by law enforcement. I have had formal and on-the-job training in matters involving human trafficking and narcotics trafficking from instructors, supervisors, and colleagues. I have been personally involved in investigations concerning the possession, manufacture, transportation, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. I am knowledgeable in the enforcement of state and federal laws pertaining to narcotics and dangerous drugs.

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of an application for a federal arrest warrant and criminal complaint against defendants PATRICK **SAULTZ**, CORDELL **WASHINGTON**, TYLER **BOURDO**, DAVID **PRICE**, TAVARYYAN **JOHNSON**, ALEXIS **LEWIS**, ALLISON **SMITH**, MICHAEL **FOWLER** AND CARMELA **BROOKS,** hereinafter referred to as the **TARGET SUBJECTS**, for unlawfully possessing with intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propanamide, commonly referred to as "fentanyl," 280 grams or more of cocaine base, commonly referred to as "crack," and cocaine, schedule II controlled substances, 100 grams or more of Heroin, a schedule I controlled substance, in violation of Title 21, U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), 841(b)(1)(A)(iii), 841b)(1)(C), 841(b)(1)(A)(i) and 846. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that the Defendants committed violations of Title 21, U.S.C. §§ 841 (a)(1) 841(b)(1)(A)(vi), 841(b)(1)(A)(iii), 841(b)(1)(C), 841(b)(1)(A)(i) and 846.

## SUMMARY OF PROBABLE CAUSE

5. On September 4, 2020, CPD officers conducted a traffic stop on Tavaryyuan **JOHNSON** who was subsequently placed under arrest for driving under suspension. During a search of **JOHNSON's** person, Columbus Division of Police (CPD) recovered a total of $3,156.38 from **JOHNSON's** left front pocket. The money was in several small bundles of small denominations which your affiant knows to be consistent with how money is collected by those engaging in illegal narcotics transactions. CPD officers also recovered 273 .3 grams of heroin and 312.2 grams of crack cocaine which was concealed in a panel in the center console of the vehicle **JOHNSON** had been driving and owned. **JOHNSON** requested an

attorney upon CPD's attempt to interview him. Further investigation revealed that **JOHNSON** is part of a DTO that is run by **WASHINGTON** and **SAULTZ**.

6. On December 17, 2020, a CPD Narcotics confidential source (CS 1) purchased approximately 0.1 of a gram of crack cocaine with Official Advanced Funds provided by CPD to CS 1, often referred to as "buy money". More specifically, CS 1 purchased this crack cocaine from a male inside 715 South Burgess Avenue, in Columbus, Ohio 43223. CS 1 gave a description of the individual he/she purchased the crack cocaine from as a black male in his mid-30's, wearing a red and black sweat suit. Shortly after CS 1 exited the 715 S. Burgess address, CPD Narcotics detectives executed a search warrant at the location. Recovered at that address was approximately 109.665 grams of crack cocaine, 115.987 grams of powder cocaine, 7.979 grams of fentanyl, 7.071 grams of heroin, and 4.5 pounds of marijuana. **WASHINGTON** was located inside the address wearing a red and black sweat suit, matching the description provided by CS 1. CPD officers also noted that no one else inside the residence matched the description from CS 1. In addition to the narcotics recovered inside the residence, $983.00 was recovered from **WASHINGTON**'s right front pants pocket. Also, located inside the residence was a High Standard .22 caliber handgun loaded with ten live rounds, a Ruger LC9S 9mm handgun loaded with nine live rounds, one set soft body armor, one set rifle plate body armor, $5,295.00 cash in small denominations which were consistent with drug trafficking and $20.00 of Official Advanced Funds or "buy money". **WASHINGTON** was given his *Miranda* warnings on scene which he waived, agreeing to speak with law enforcement. **WASHINGTON** stated that he was at the house playing cards and did not reside there. **WASHINGTON** stated he did not know anything about the guns, drugs or paraphernalia that was recovered, even after being confronted with all the above items being around the house in plain view. When law enforcement asked **WASHINGTON** why a cellphone in a case containing his Ohio driver's license was found next to suspected drugs and digital scales in the kitchen, he stated he did not know. **WASHINGTON** then refused to answer additional questions and was not arrested for any offenses at that time. **WASHINGTON** was not-charged at this time in order for the investigation into this DTO to continue.

7. On August 3, 2021, a search warrant for the address 139 South Princeton Avenue Columbus, Ohio, was obtained from Franklin County. That same day, the search warrant was executed and proof of residence in the form of mail was recovered indicating that **PRICE** had been residing there. Upon executing the search warrant, **PRICE** was present at the address. Approximately 80.62 grams of cocaine, 28 grams of fentanyl, three milligrams of Xanax, three firearms, and $9,701.00 in United States currency. Law enforcement also located a notebook piece of paper from the dining room table with the phone number (614) 735-6837 in large black writing. This was the same phone number **BURRIS** had provided law enforcement as it related to the contact number for buying drugs from the DTO. After **PRICE** was advised of his *Miranda* warnings, he waived and agreed to speak with CPD. **PRICE** informed investigators that he had been was visiting a friend at 139 South Princeton Avenue prior to the execution of the search warrant. **PRICE** also advised that he did not live at 139 South Princeton and had no belongings there.

3

8. On or about September 5, 2021, investigators utilized a confidential informant (CI) to conduct a buy of approximately 2.8 grams of narcotics. The CI purchased the illegal drugs from **BOURDO** and Hunt at 90 North Warren Avenue, Columbus, Ohio. The narcotics field tested positive for fentanyl and cocaine.

9. As this investigation progressed, investigators identified a residence at 90 North Warren Avenue in Columbus, Ohio as a location associated to this drug trafficking organization (DTO). On or about September 16, 2021, law enforcement obtained a residential search warrant for the 90 North Warren address and the following day, the search warrant was executed. At the time of the execution, a total of 16 individuals were located inside the residence at 90 North Warren Avenue, law enforcement recovered approximately 39 grams of cocaine, 80 grams of fentanyl, one firearm and $3,000.00 in United States currency in small denominations consistent with drug trafficking and payments for small amounts of drugs. None of the above noted individuals made any statements at the time the search warrant was executed.

10. On or about September 21, 2021, an officer with CPD met with a cooperative source related to the DTO (herein, identified as CS 2). CS 2 stated the residence of 90 North Warren is currently being controlled by narcotic traffickers operating out of the residence. CS 2 stated that "Cam" (Robert Tinsley III), "Ang" (Angela Hunt), Darrell Fields, and Tyler **BOURDO** oversaw the day-to-day narcotics trafficking at the residence. CS 2 stated that **BOURDO** supplied the house with narcotics and that he was in charge of picking up the money from the lower-level drug dealers related to this DTO. CS 2 stated the drugs were being supplied by Patrick **SAULTZ** and David **PRICE.**

11. On January 14, 2022, investigators were conducting surveillance in the area of 559 South Burgess Ave when they observed a vehicle pull park in front of the address and identified Alexis **LEWIS** as being the passenger of the vehicle. Upon exiting the vehicle, law enforcement observed **LEWIS** meet up with **WASHINGTON** on the porch of 559 South Burgess Ave at which point, both **LEWIS** and **WASHINGTON** entered the residence.

12. Surveillance then observed **LEWIS** exiting the address approximately 15 minutes later and reentering the passenger seat of the vehicle she arrived at the address in. CPD initiated a traffic stop on the vehicle and arrested **LEWIS** for an active warrant she had. At the time, nothing was recovered on her person. After her arrest, **LEWIS** requested a meeting with law enforcement. After receiving her Miranda warnings, **LEWIS** began discussing her boyfriend "Pat," believed by you affiant to be a reference to Patrick **SAULTZ** and stated that he was a good person but is selling marijuana. **LEWIS** refused, to give "Pats" full name and reiterated again that "Pat" just sells marijuana. **LEWIS** did not provide any information in regards to the illegal activity being conducted by this DTO.

13. The following day, Alexis **LEWIS** overdosed on narcotics within the Franklin County jail and was administered Narcan to counteract the drugs she had taken. **LEWIS** was then transported to the hospital for follow-up treatment related to her drug use. Upon her release on January 17, 2022 from the hospital, **LEWIS** was transported back to the

4

Franklin County Jail. After arriving at the jail again, **LEWIS** had an x-ray scan completed of her person which revealed LEWIS still had contraband on her person. Subsequently, a plastic baggie containing a pink and red substance was recovered in **LEWIS's** underwear. The substance was suspected to be fentanyl. **LEWIS** made admissions to concealing the contraband in her vagina upon being arrested on January 14, 2022.

14. On January 27, 2022, a federal search warrant was obtained for the cell phone seized from **LEWIS** upon her January 14, 2022, arrest. A subsequent extraction of the cell phone revealed numerous messages between **LEWIS** and other defendants, including but not limited to **WASHINGTON, BOURDO,** and **PRICE**. Law enforcement noted that in some of the text messages from **LEWIS** to **WASHINGTON, LEWIS** had been requesting WASHINGTON provide her with drugs.

15. On February 13, 2022, investigators monitored another recorded jail call from **LEWIS** to **SAULTZ**. This call was placed from the Franklin County, Ohio jail where **LEWIS** had been held. This call was monitored and recorded and **LEWIS** was informed as such. During the call, **LEWIS** asked **SAULTZ** who he had over at the house and **SAULTZ** responded "nobody." **LEWIS** stated, "I hope you've got gloves on" to which **SAULTZ** responded "I don't". **LEWIS** then became upset and responded, "umm when you're doing yardwork". **SAULTZ** then told **LEWIS** "I'm gonna drink water and stay away from this shit for the next 9 days", to which LEWIS responded by calling **SAULTZ** a liar, stating "what do you think you're gonna get CBCF again?" **LEWIS** then stated to **SAULTZ** that he is "doing the same dumb ass shit". Based upon my training and experience, conversational context clues, and case background information, your affiant believes "yardwork" is code for handling, cutting, or distributing fentanyl and other illicit drugs. The investigation further revealed that during a routine drug test for his probation, **SAULTZ** tested positive for fentanyl on February 22, 2022. This positive test for fentanyl was nine days after **SAULTZ's** conversation with **LEWIS** as noted above, further corroborating that "yardwork" was, in fact, a reference to handling fentanyl.

16. On May 4, 2022, investigators observed a blue Jeep Cherokee park in front of 559 South Burgess Ave. Unknown individuals, hereinafter identified as CS 3 and CS 4, exited the Cherokee, approached the porch of the residence, and were greeted from the front door of the residence by Allison **SMITH**. CS 3 then entered the South Burgess address with **SMITH** and stayed inside for approximately six minutes. Upon exiting, CS 3 returned to the Jeep Cherokee where CI 4 was then observed exiting from the driver's seat. CS 4 began unloading items from the Jeep Cherokee and CS 3 and CS 4 carried approximately five items into the South Burgess residence through the front door. CS 4 was seen exiting the residence carrying two small orange or red boxes and investigators observed CS 4 placing those boxes into the rear of the Jeep Cherokee. At that time, **SMITH** and CS 3 were still inside the residence. **SMITH** and CS 3 then exited 559 South Burgess Ave, conversed outside, and then entered their separate vehicles. CS 3 and CS 4 were then observed driving away from 559 South Burgess and law enforcement began to follow their vehicle for investigative purposes.

5

17. Physical surveillance revealed that CS 3 and CS 4 drove to Lancaster, Ohio, stopped at multiple stores there, and stayed in Lancaster for multiple hours. For example, CS 3 and CS 4 entered and exited numerous retail stores such as Walmart, Kroger, and Target over the course of six hours. It is your affiant's belief that during this time period, CS 3 and CS 4 were stealing merchandise from the stores they entered and this was later confirmed by CS 4. Later in the day, CS 3 and CS 4 drove back in the direction of Columbus, Ohio. A traffic stop was then initiated by CPD at approximately 8:25PM. During the traffic stop, CPD officers observed drug paraphernalia in plain view. CS 3 and CS 4 were both detained.

18. During a subsequent search of the vehicle, CPD officers found suspected crystal methamphetamine and suspected fentanyl. The suspected narcotics were contained within multi-colored containers and drug paraphernalia was scattered throughout the vehicle. CS 3 agreed to speak with law enforcement and after receiving his/her *Miranda* warnings, CS 3 admitted to being a drug addict and indicated that when he/she lived in Columbus, he/she established a drug connection with a group of individuals that he/she will only purchase drugs from this group. CS 3 indicated that he/she has purchased drugs from the location of 559 S. Burgess in the past.

19. The residence located at 559 S. Burgess is within one thousand feet of the real property of a public school, to wit: Burroughs Elementary.

20. According to CS 3, on that day, May 4, 2022, he/she had purchased the above drugs from "Alli" (**Allison SMITH**) at a location on South Burgess and that "Alli" doesn't own the house but just sells for the people who are in charge. CS 3 further identified the location of 559 South Burgess as the address CS 3 brought drugs from that day and indicated that this group sells drugs from multiple locations and that the police have "hit" several of their drug houses

21. An interview of CS 4 was also completed during which, law enforcement noted that he/she had no relevant information related to this DTO. Both CS 3 and CS 4 were released pending a lab analysis of the seized suspect narcotics.

22. A laboratory analysis was conducted as to the items seized from CS 3 which were purchased from **SMITH** on May 4, 2022. The laboratory report found that the suspected methamphetamine was in fact 6.108 grams of methamphetamine and the suspected fentanyl was in fact .418 grams of fentanyl and 1.466 grams of a fentanyl and cocaine mixture.

23. On June 22, 2022, Michael **FOWLER** called the telephone line being utilized by Patrick **SAULTZ**. In this call, **FOWLER** tells **SAULTZ's** "I can come down tomorrow do what I did last time" and **SAULTZ** replies "yep". **SAULTZ** then asks "what the a... what did you do"? Michael **FOWLER** responded "15". **SAULTZ** then states that he'll make sure "bro" when you get down here.

6

24. Through law enforcement and open source databases, investigators determined Michael **FOWLER** was the primary possessor of the phone line used to communicate with **SAULTZ**. Law enforcement also determined **FOWLER** to be a residing in Canton, Ohio. This would corroborate the context in the mentioned call when stating he was coming down tomorrow.

25. On June 23, 2022, pursuant to a Court Ordered wiretap, law enforcement intercepted a call on the cellular phone used by Cordell **WASHINGTON**. Patrick **SAULTZ** called the telephone line being utilized by Cordell **WASHINGTON**. In this call, **SAULTZ** informed **WASHINGTON** that Mike is coming down today and wants to "Jump into the same situation". **SAULTZ** states "That's cool. I just wanna make sure there is enough" and **WASHINGTON** replies "yeah".

26. Through training, experience and case background information, your affiant believes the context of the mentioned calls in indicative of a significant drug transaction that is going to occur. Later in the day, at approximately 4:30PM, surveillance officers observed a blue SUV arrive at the residence of 559 S. Burgess Ave. This residence at 559 S Burgess is within 1,000 feet of the real property of a Columbus Public School, that is, Burroughs Elementary. The passenger of that vehicle matched the description of Michael **FOWLER**. **FOWLER** was then observed walking inside the residence of 559 S. Burgess Ave where Cordell **WASHINGTON** was already at. At 5:46PM, electronic surveillance showed **FOWLER** and **WASHINGTON** exiting from 559 S. Burgess and walk toward the car **FOWLER** arrived in. It is worth noting, when **WASHINGTON** exited from the residence, surveillance observed a large object being concealed in his left front waistband. As the two approached the mentioned vehicle, surveillance observed the back hatch of the SUV open. Surveillance showed **FOWLER** stuffing something, which was later determined to be 9 ounces of fentanyl, or approximately 235 grams, in the rear compartment of the vehicle. As **FOWLER** and **WASHINGTON** walked away from the vehicle, the object that was in **WASHINGTON** waistband was no longer there. Investigators believe **WASHINGTON** handed **FOWLER** contraband and **FOWLER** concealed it in the back of the vehicle.

27. After this transaction was complete, **FOWLER** got back into the passenger side of the vehicle where he and the driver pulled away. Subsequently, Ohio State Highway Patrol initiated a traffic stop on the vehicle for a multiple traffic violations. Due to the smell of raw marijuana, Ohio State Highway Patrol searched the vehicle where they located the 9 ounces or approximately 235 grams of fentanyl.

28. Ohio State Highway Patrolman read **BROOKS** and **FOWLER** their Miranda Warning, in which they waived and agreed to speak with law enforcement. Carmela **BROOKS** told law enforcement the drugs recovered from the vehicle were hers and that it was cocaine. Additionally, **BROOKS** told law enforcement the cocaine is for personal use.

29. Later, pursuant to a Court Ordered wiretap, law enforcement intercepted a call from Michael **FOWLER** to the telephone line that was being used by **SAULTZ. FOWLER**

7

told **SAULTZ** the drugs were intercepted. In that call, **FOWLER** asks **SAULTZ** for help with an attorney. **SAULTZ** told **FOWLER** he would and asks **FOWLER** if he wanted to come back to Columbus. **FOWLER** told **SAULTZ** that he didn't know if he had enough money and **SAULTZ** said they would work it out.

30. After this event took place, investigators monitored several other phone calls and text messages throughout the next day between **FOWLER** and **SAULTZ**. In those messages **SAULTZ** and **FOWLER** line up another transaction which instigators believed to be fentanyl.

31. On June 26, 2022, your affiant observed through electronic surveillance **SAULTZ** exit from the residence of 559 S. Burgess Ave wearing purple gloves. **SAULTZ** was then seen entering the driver's side of a silver Chevrolet Impala that was parked in the drive way. Investigators are familiar with this vehicle be the primary means of transportation for **TARGET SUBJECT,** Allison **SMITH**. Surveillance observed **SAULTZ** hide what is now determined to be approximately one-half pound, or approximately 235 grams of fentanyl inside the vehicle. Per intercepted wire communications, **SAULTZ** planned to follow the Impala, driven by associates of this DTO, to Akron, Ohio in his black BMW 750i. At approximately 4:45PM, investigators observed the said Chevrolet Impala leave 559 S. Burgess being followed by **SAULTZ** in his black BMW 750i (Ohio temporary tag 0O31151). It is also with noting that **LEWIS** was riding with **SAULTZ** in the passenger seat. Through case background information, investigators are familiar with members of this DTO deploying several counter surveillance methods. Your affiant, believes by **LEWIS** riding passenger, she is serving as a lookout and diversion so that **SAULTZ** was not travelling alone. Investigators followed **SAULTZ, LEWIS** and the Impala as it traveled north bound on I-71 as it heading toward Canton, Ohio. At approximately 5:20PM, Ohio State Highway Patrol intercepted and initiated a traffic stop on the vehicle for an equipment violation, where the driver was later found to be operating without a license. A subsequent search of the Impala was conducted and approximately one-half pound of fentanyl hidden by **SAULTZ** was recovered.

32. Throughout this investigation, your affiant has seen **LEWIS** on a consistent bases accompanying SAULTZ as he's conducting illicit activity. Surveillance has shown **LEWIS** carrying large, medium and small bags into and out of the distribution house located at 559 S. Burgess Ave. Through case background information, your affiant believes **LEWIS** to be a drug and money courier for this DTO.

## CONCLUSION

33. Based upon the information presented in this affidavit, there is probable cause to believe that, within the Southern District of Ohio, the defendants, PATRICK **SAULTZ**, CORDELL **WASHINGTON**, TYLER **BOURDO**, DAVID **PRICE**, TAVARYYAN **JOHNSON**, ALEXIS **LEWIS**, ALLISON **SMITH**, MICHAEL **FOWLER** AND CARMELA **BROOKS**, did knowingly and unlawfully possess and conspire to possess

8

with intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propanamide, commonly referred to as "fentanyl," 280 grams or more of cocaine base, commonly referred to as "crack," and cocaine, schedule II controlled substances, 100 grams or more of Heroin, a schedule I controlled substance, in violation of Title 21, U.S.C. §§ 841 (a)(1) 841(b)(1)(A)(vi), 841(b)(1)(A)(iii), 841(b)(1)(C), 841(b)(1)(A)(i), 846 and 860.

Trace S. Way, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 28th day of June.

Chelsey M. Vascura
United States Magistrate Judge
United States District Court
Southern District of Ohio

9